AMBROSE C. HANKINSON *et al.*, Appellants, *v.* COREY BARBOUR *et al.*, Appellees.

### APPEAL FROM PEORIA.

A purchaser of land, who has such notice of a prior unrecorded deed, as ought to have put him on inquiry, must take the consequences of his neglect, and will have his conveyance set aside.

THIS bill alleges, that on the 13th day of January, 1832, Amasa Barbour, of Jefferson county, New York, was seized in fee simple of the S. E. 25, 13 N., 9 E., in Marshall county; that Amasa Barbour and wife, on that day, conveyed to complainants, in fee simple, by warranty deed; that by virtue of said deed, they became seized in fee, and have remained so seized.

That Amasa Barbour died in 1833; that they omitted to have their deed recorded. That Ambrose C. Hankinson, for the purpose of defrauding complainants out of the land, procured a conveyance for a portion of the land, from the heirs of Barbour, well knowing complainants' rights.

Hankinson procured the following conveyances:

October 13, 1854, from Ira Hubbard and Roxana Hubbard, Roxana being the heir of Amasa Barbour; consideration, $1,500. Recorded Oct. 28, 1854.

July 31, 1855, from Buel Fuller and Sally Fuller (heir); consideration, $100. Recorded August 6, 1855.

August 1, 1855, from Ennis Mosher and Catharine Mosher (heir); consideration, $100. Recorded August 8, 1855.

August 2, 1855, from Benjamin Collins and Polly Collins (heir); consideration, $100. Recorded August 8, 1855.

That in 1854 and 1855, there were three heirs more, to wit, Abraham Barbour and Elbridge Barbour, and Lavina Ward.

That Amasa Barbour died testate, leaving a will, which was duly proven and admitted to probate in Jefferson county, New York, the place of his domicil at the time of his death, by which will, Roxana was disinherited.

Complainants have paid the taxes on the land for the last twenty-five or thirty years, and it has been notorious in the county of Marshall that they were the owners of said lands.

That Hankinson when he procured the conveyance well knew that the heirs of Amasa Barbour had no title to any part of the land, and that the title was in the complainants, that he was not a *bona fide* purchaser, etc., but was *mala fide*, and that said deeds are fraudulent and void.

That the deed from Roxana Hubbard was never acknowledged by her, as the deed will show, and for that reason Hankinson acquired no title by said deed.

That Abraham Barbour, heir of Amasa Barbour, did, the 10th of October, 1855, procure from said Ira Hubbard and Roxana, his wife, a conveyance, by quit-claim deed, of the pretended interest of Roxana, which was recorded.

Land worth four thousand dollars. Oath to answer waived. Asks to have the deeds set aside and held void.

That the complainants now are and for several months have been in possession of the land, and therefore cannot bring ejectment, and the defendants refuse to bring ejectment.

The answer of A. C. Hankinson admits title in Amasa Barbour. That he claims patent title.

Denies all knowledge of the deed to complainants.

Denies that they have been openly and notoriously known as owners. Denies payment of taxes.

Denies, that, if the complainants had any deed, it was not recorded in the proper county.

Admits that the said Amasa Barbour died about the year 1833, but whether he died testate or intestate is not within his knowledge.

Admits that the said Amasa Barbour left, at the time of his death, the several named children in the complainants' bill.

Denies that he ever had any knowledge of any conveyance to the complainants, or that they were the legal owners, or that they had paid all the taxes from the date of said conveyance.

Admits that he purchased the land from the heirs set forth in the complainants' bill, but denies that he knew the complainants, or had ever heard of them, or of their claim. ·

Denies that he obtained the conveyances mentioned in complainants' bill fraudulently, but says he purchased in good faith, without any knowledge of any prior conveyance, and denies that he had any information from the parties who conveyed to him.

Denies that at the time he made said purchases, he knew said land was worth four thousand dollars, but, on the contrary, avers that in his judgment it is not worth half the amount, and the consideration paid for said land by him did not exceed two hundred and fifty dollars.

Denies that said complainants are now actually in possession of said land, having fenced and enclosed the same, but is informed, on the contrary, that said land is not enclosed.

The cause was heard on bill, answer, proofs, etc., and a decree was rendered setting aside the conveyances from the heirs of Amasa Barbour, and directing Hankinson to pay the costs. From this decision the respondent below appealed.

H. M. WEAD, for Appellants.

N. H. PURPLE, for Appellees.

CATON, C. J. The whole question in this case depends on the fact whether Hankinson, through his agent Greenleaf, had notice of the prior unrecorded conveyance to the complainant, or had such information as would make it his duty to inquire and ascertain whether there was not such an unrecorded deed. This question, we think, is very easily disposed of. Unless five unimpeached witnesses have committed perjury, then Greenleaf, who made the purchase of the heirs, had such

notice. Each one of these swears, either that he gave him direct information of the fact, or that he stated facts to him which should have prompted any prudent man to inquire of the complainant whether he owned the land—Greenleaf denies such notice—well, this case is but another instance of how reckless and unconscionable men become, who make it their business to hunt up old claims appearing of record, and purchase out heirs, most frequently with the expectation of defrauding some one who has an unrecorded deed. In this case, Mr. Greenleaf, in order to console Mrs. Ward who showed sympathy for the complainant, and to overcome her scruples about signing the deed, told her that he was a rich man and would not miss it. At least, we are not inclined to believe this man in preference to a host of other witnesses.

The decree is affirmed.

*Decree affirmed.*